Our final case of the day is in the matter of Christos Dimas. Mr. Cook. May it please the Court. Mr. Dimas has been the victim of financial hardship for some 15 years now. It goes back to the 07-08 recession in which the food market that was the subject of this appeal and underlying evidentiary proceedings blew up. He lost hundreds of thousands of dollars. He lost the restaurant that he opened more than 40 years ago when he came to this country as an immigrant. He lost everything. When he attempted to get a fresh start with a bankruptcy lawyer, he unfortunately was referred to a gentleman by the name of Nikola Durek, sometimes Nick Durek. Mr. Durek did not help Mr. Dimas but compounded his problems and financial issues. He converted hundreds of thousands of dollars for Mr. Dimas and filed or facilitated the filing of multiple bankruptcies, none leading to discharge, in order to extend the relationship with Mr. Dimas so he could continue to convert monies and funds. When Mr. Dimas learned of this fact, he sued Mr. Durek. And he also reported Mr. Durek to the ARDC. When he went to the ARDC, he learned that he was not alone, that multiple complaints were pending, all with the same or similar allegations. Mr. Durek had converted monies, had commingled accounts, had filed frivolous proceedings or multiple bankruptcies on behalf of some of the clients, never resulting in discharge. And there were several such complaints. I believe there was a criminal investigation going on as well. Last year, the hearing board for the ARDC concluded that all of the allegations levied against Mr. Durek by all the complainants was accurate and true and recommended his disbarment. Just last month, the review board affirmed that decision and also recommended the disbarment of Mr. Durek. Now, every time I or Mr. Dimas references Mr. Durek and his participation in these proceedings or his representation of Mr. Dimas over the last several years, Mr. Sturgiotis objects. He claims that Mr. Durek has nothing to do with the underlying proceedings, that Mr. Durek had no presence in the evidentiary proceedings. Mr. Cook, maybe I'm just misunderstanding something, but none of what you're saying seems to have anything to do with the issues on appeal. Well, it has one primary issue. Our time is short. You might want to concentrate on whether the bankruptcy judge and district judge have made any clearly erroneous findings or made any error of Illinois law. Of course, your honor, I do want to point out, though, that that more than half of the evidentiary hearings and arguments by counsel in those hearings by Mr. Sturgiotis involved issues unrelated to this particular proof of claim. It involved conduct outside of the proof of claim. It had nothing to do with the proof of claim. And the reason it was introduced in such a manner was to create bias on the part of the bankruptcy court against Mr. Dimas. I'm going to interject, Mr. Cook, because I was having something of the same feeling. I mean, when I was reading the briefs in this case, I expected, you know, for example, you to address the fact that the limited liability corporation agreement had left blank the forms for initial capital contributions. And trying to boil this down to something manageable looked to me like the legal question was whether there was an implied agreement among the three men involved that they would have equal contributions. And if so, you know, what were the amounts of those contributions? And as I read Illinois law, particularly for an agreement with no integration clause, Illinois law does have a concept of oral and implied contracts. And there was evidence that the bankruptcy court and the district court accepted to say that such a thing happened here. And so what these three individuals decide amongst themselves isn't the same thing as what you do with the dissolution of the LLC or what things are debts of the entity and what things that, you know, people have inter se agreements all the time, you know, just deciding who's going to have what interests. And maybe if you could talk about some of that, it would be helpful. Of course, Your Honor. First, while implied contracts and implied in fact contracts are recognized in Illinois, they cannot stand where there's a written contract that speaks to the exact same provisions. That's not true, actually. I mean, the LLC statute was recently a couple years ago, I guess, amended expressly to recognize that there could be a package of contracts. There could be an implied contract and express contract. So that's one problem with what you said. And secondly, Illinois law allows extrinsic evidence, not just if there's ambiguity, but if there's incompleteness. And if anything is incomplete, it's a blank line that nobody wrote something down on. So I just don't see why under Illinois law, there's any problem with at least the effort to prove that there was a complementary, that's with an E, complementary agreement to the written agreement. Well, two reasons, Your Honor. Well, the two might be able to stand. They can't if they're irreconcilable. And in this case, that is. Why are they irreconcilable? I don't see that. I'm sorry. Excuse me, Your Honor. First, with respect to initial contributions, the provision is captioned initial contributions, initial capital contributions. It necessarily means the first contributions, not contributions over the life of the LLC. It's the initial contributions. Now, the blanks are present. You're right. Over what period of time is it called initial? Well, initial means first. And there's been no evidence to suggest otherwise. No evidence by Mr. Sergiatis during the course of the two-day evidentiary hearing in which he said this is what we meant by initial contribution. In fact, he doesn't address any of the elements for an applied-in-fact contract or any contract at all. What you see in the hearing transcripts is a constant conclusion, a reference to a conclusion. There was an agreement.  There was an agreement. While you might sometimes be able to get away with that by way of an allegation in a complaint, this was an evidentiary hearing in which the proofs were required. He did not even attempt to establish any single element of a contract. All he kept saying repeatedly was there was an agreement. They didn't get around a coffee table. They didn't get a Starbucks and talk about what this provision meant or what the contributions were going to mean or equalizing those contributions over the life of the LLC. None of that came in. All we have is Mr. Sergiatis saying, well, there was an agreement. There was an agreement. The initial contribution lines are just that. They were for the first. Because they were not filled in, all we can do is look at what the actual initial contributions were. And those are reflected in the 206, I'm sorry, calendar year 206 tax returns for the LLC and the K-1s. Excuse me. Mr. Cook, there is other evidence in the record, though, that seems to at least would allow the inference that there was an agreement to make these equal. I'm not saying the evidence necessarily went all one way, but that's what district judges resolve. So the bankruptcy judge didn't find Mr. Demas to be a credible witness. She did find Mr. Sergiatis to be credible. She resolves, you know, really course of conduct is what struck me as more as anything. But she resolves threads going in different directions and decides, well, yes, there is an agreement. So why is that clearly erroneous? Well, it is for this reason, Your Honor. The basis for finding an applied contract is typically a course of dealings. There was no course of dealings here. In a stretch, and by the way, I think this is worth pointing out, never, going back to 2008, did Mr. Sergiatis suggest that there was an applied contract anywhere. What he did say is we should be amending the contract. What he did request of his partners is that they amend the contract. Before he filed the 2008 lawsuit, he retained a lawyer. This was when it became clear that the food market project had cratered, that they had lost everything, and this idea was never going to come to fruition. So he retained a lawyer and looked to a lawyer to help him try to recover whatever capital contributions he could get. I'm not sure how you're helping to answer Judge Wood's question. You're certainly not helping me. The major question is whether the bankruptcy judge, whether Judge Cox, made clearly erroneous findings or violated Illinois law. What you're doing is essentially repeating the submission made to Judge Cox or repeating parts of it. And if she had found Mr. Dimas to be credible and Mr. Sergiatis to be not credible, then presumably she would have made favorable findings. But she found that Mr. Dimas was lying through his teeth for an extended period and had committed bankruptcy fraud and didn't believe a word he said. Why is that clearly erroneous? Because the basis for the conclusion should never have been introduced or allowed. All of it had to do with activity and conduct completely unrelated to Mr. Sergiatis' proof of his claim, completely unrelated, talking about the facilitation of multiple bankruptcies, talking about a third party selling the 3420 Devon property to another third party and the efforts of his wife to get some money at the closing because they were still a tenant in possession for their family. She based that conclusion of credibility on information and argument, really, by Mr. Sergiatis' counsel from time to time during the two-day hearing that should have never been allowed or introduced. That's how she reached the conclusion, and that was clear error. And further support for that is found going back to 2008. The lawyer who represented Mr. Sergiatis at the evidentiary hearing wrote Mr. Theo and Mr. Dimas and stated the following. Financial information that we do have reflects that Mr. Sergiatis has made significant contributions and advances into the company's financial structure, not on your behalf, not in your favor, Mr. Dimas, into the company's financial structure far in excess of your contributions. He goes on. We not only need an accounting, but the pertinent agreements must be modified and new agreements implemented in order to correct the imbalance. He wanted to amend, basically, the operating agreement. That's what he said just months before he filed the 2008 lawsuit, in which count one includes the primary account for reformation. There was never an agreement among the parties to reform the operating agreement. There was never an agreement of the parties to amend the operating agreement. The only testimony during the evidentiary hearing on this point, also from Mr. Sergiatis, other than saying there was an agreement, there was an agreement, there was an agreement, was that when he approached Mr. Dimas to correct the capital contributions, or what he wanted to do is amend the agreement such that everybody was losing the same amount of money and you gave him an opportunity to recoup some of his capital, or so he thought. When you approached him, Mr. Dimas said, we'll talk about it. We'll talk about it. In other words, there was never a meeting of the minds, something that's critical to establishing an applied fact and contract. Courts are reticent to find applied contracts, particularly when there's written contracts that speak to these issues. Every capital contribution beyond that which was provided by an initial contribution reflected in the K1s in 2006 were loans, loans for which the company was liable. Now, Mr. Sergiatis was never going to recover those monies, nor was Mr. Dimas, nor was Mr. Thiel, because the project blew up and the LLC had no money or means by which to return any of the capital, but that was the only means by which Mr. Sergiatis could do so. This is nothing more than a manufactured claim in an effort to recover some of his lost capital contributions. As a default, with respect to the operating agreement, the LLC Act does control. Not an applied fact agreement, but the actual LLC Act. And there it says, to the extent the operating agreement does not otherwise provide, this Act governs. This Act. And in that Act, the members aren't liable for capital contributions. The LLC is. That's 180-15-5, 10-10, A, N, D. I reserved a short amount of time for rebuttal, and I will reserve the remainder of my time for that. Thank you, Mr. Cook. Mr. Golan. May it please the Court. My name is David Golan. I'm counsel for the appellee, George Sergiatis. There are three issues before the Court, as the Court has noted. The first threshold issue is whether the Bankruptcy Court properly considered extrinsic evidence when making a determination of an implied agreement amongst the members to equalize their capital contributions. As to this, the Court has to over-review. The other two issues, however, are subject to clearly erroneous standard, and that is whether the Bankruptcy Court, after reviewing the evidence, whether its finding of a equalization agreement for contributions was clearly erroneous. And lastly, of course, whether the factual determination of the claim was clearly erroneous. Mr. Golan, can I ask you some questions about the first issue with respect to the contract? Did your client or the LLC ever sue Mr. Demos for breach of the operating agreement, other than making a claim in the bankruptcy case? Yes. The lawsuit was filed in state court in 2008. That's right. Was it filed by the LLC or was it filed by your client? No, it was filed by my client, George Sergiatis. Because I have little concern here. The district court concludes the parties had contemplated expressing something about the allocation of capital contributions, but that whatever they contemplated somehow did not end up in the final agreement. But couldn't we, by looking at the final agreement, conclude that it did, in fact, end up in the final agreement? Because Article 2, under initial contributions, says the initial capital contributions to the company of the members shall be made concurrently with the members' execution and delivery of this agreement. If we look at what was the initial contribution made by the members concurrently and with the members' execution of the delivery of the agreement, don't we know the answer? Because it's entirely possible that the initial contribution from Mr. Theo and Mr. Demos was zero, and from your client it was X. And why do we have to fill in the blanks? Why do we even need to look to extrinsic evidence to determine that? Sure, Your Honor. First of all, the agreement with regards to equalization of contributions was not just limited to so-called initial contributions. And in fact, as Your Honor read, initial contributions was defined in here as those being made concurrently with the execution. There wasn't any evidence, in fact, of what contributions were made on that specific date, on June 12, 2006. So the agreement as to what contributions were to be made, when they were to be made, how they were to be equalized— Where's the equalization agreement in the contract? I'm looking at it here. It is not in the operating agreement. That's just the point. So I thought this was in part your point that since this agreement doesn't have an integration clause, which is a little surprising, but it doesn't, it was permissible for the district court to examine extrinsic evidence to see if the parties ever entered into a supplemental agreement of some kind. Now, of course, Mr. Cook argues that the elements of an implied contract—offer, acceptance, consideration, and so on—were not found. But anyway, step one was for the district court to examine whether there was some additional agreement for deciding what its terms might have been. That is exactly our position, Your Honor. And that is to say the bankruptcy court properly looked to extrinsic evidence for three reasons. Because the operating agreement was not complete as to the contributions to be made by the members. But more importantly, it is not in direct conflict with any express provision. And that is really the key and the test that the courts have looked to. So you can add to an agreement by way of an applied agreement as long as it's not in direct conflict with any express provision. And we submit and we've set forth in our briefs that is simply not the case. There is no provision in the operating agreement that would express the conflict with a finding of an agreement amongst the parties to equalize their contributions. But couldn't we—that's my question. I mean, couldn't we find from the blanks that they, in fact, indicated when they signed the operating agreement that they, in fact, did not agree to equalize contributions? You could—I suppose you could find either way. What the decision for this court is whether or not the bankruptcy court properly inferred that that could not be found as a matter of law. That it was incomplete to the point that it could consider extrinsic evidence. And so once you get past that and once you find that there is extrinsic evidence that can be looked to, there were several bases that the court could look to to find this agreement. In addition to the testimony of Mr. Stergiadis, where he clearly states that this was the agreement amongst the parties, this was his understanding as to the equalization. You have the tax returns filed on behalf of the partnership—excuse me, the limited liability company, which show one-third each for not only profit and loss, but for capital. You have the capital contribution claim, which in the schedules filed by Dimas himself in his first bankruptcy case, which asserted a claim of the same nature, seeking contribution amongst the other members for payments he made on behalf of and in favor of the limited liability company. But I think what's significant too, what's been overlooked perhaps, is the testimony of Mr. Dimas. Mr. Dimas nowhere in the transcript expressly refutes the agreement to have the contributions equalized. In fact, to the contrary, when asked about the $32,000 contribution claim that he had and he asserted in his first bankruptcy case, he said it was part of the agreement at that time because to begin, I was the only one which participated with money. George Stergiadis and Dean Theo came after to bring money, and the agreement was part of it to be equal shares, to bring to me or find a difference down the road later. And so you had all the evidence before the court. And again, a court can find an implied agreement proven by the facts and circumstances of the case and of the parties. And it simply cannot be said that the bankruptcy court's conclusion that there was an applied agreement here was clearly erroneous. In fact, the testimony of Mr. Dimas, for the most part, was an attempt on his part to show that he contributed more than everybody else. That's why he came to court. That's why he filed his motion for reconsideration, asking the bankruptcy court to have an evidentiary hearing because he claimed he now had reviewed all the documents and he had evidence of what he contributed and what the other partners contributed. The last issue, of course, is whether the bankruptcy court's determination of the claim of the amount that it did was clearly erroneous. And here, I think since it was an issue of credibility of the witnesses in particular, the court cannot find that the bankruptcy court's determination was clearly erroneous. I'd like to quickly address a couple of matters that were raised by counsel in the opening remarks. With regard to his former counsel, Mr. Durek, and I think the court from their questions perhaps share my view, but first of all, we believe that's irrelevant. But also, as a threshold matter, these arguments were not raised in the courts below, and for that reason alone, we believe that the arguments have been waived and the court should not be considering the ARDC report and the other related documents that Mr. Dimas has tried to introduce at this level into the appeal. Going back to the question of the initial contributions, the K-1s and the tax returns actually do not show the initial contributions. What they show were the aggregate of the contributions made for that year and for 2006 and, of course, for 2007. And significantly, too, in the state court complaint, which was filed by Mr. Sturgiotis, it was not just an action for reformation. It was an action against Mr. Dimas for the equalized amount that he was required to pay, and it included in there all of the amounts that had been contributed up to that time. Excuse me, Mr. Golan? Yeah. Is that litigation concluded, or is that state court litigation still rumbling along somehow? I don't know the answer to that, Your Honor. As a practical matter, I believe as now this court, the bankruptcy court, and ultimately if it becomes a final order, will have found the claim by Mr. Sturgiotis. Because, of course, at one point the bankruptcy judge thought, let's let the state court resolve all of this, and then she changed her mind. Yes. And then Mr. Dimas came back on a motion to have a reconsideration and have an evidentiary hearing, and as I said before, he said in his moving papers, I now have had the time to look at and find my papers, and I'd like to put forth a matter of evidence, what I believe were the contributions, and to force Mr. Sturgiotis to put forth his evidence, and that's what was done. At what point did either side say, wait a minute, this is a pure state law issue, and therefore has to be decided, if at all, in federal court by a judge appointed under Article III of the Constitution? Your Honor, I don't know the answer to that question. I was not the trial counsel. It has certainly not been raised on appeal, but what happened in this case is, in the absence of a waiver, a clear violation of the Supreme Court's ruling in Stern against Marshall. This is something, the decision made in this case, is something a bankruptcy judge lacks authority to make. But that issue is itself subject to waiver or forfeiture, and it looks like it has been, at a minimum, forfeited by Mr. Dimas. But I'm a little surprised, given your description of the history, that somebody didn't say, excuse me, this should either be made by the state court or by the federal district judge and not by the bankruptcy judge. Again, Your Honor, I don't know why it wasn't done. I would concur with Your Honor's comment that, at this point, that has been waived. Forfeited is the correct description, but yeah, works out the same. It's the same here. Forgive me, Your Honor. If the court has no further questions, I'm prepared to rest on my briefs at this point. Thank you, Mr. Golan. Anything further, Mr. Cook? A few points, Your Honor. First, I'm not sure because the issue, I also was not Mr. Dimas' counsel in the underlying evidentiary hearings. But given that Stern versus Marshall raises constitutional and subject matter jurisdiction over these claims, I'm not sure that it is too late to raise them now. Let's just say the Supreme Court has held that this issue can be waived or forfeited, and we're not going to disagree with the Supreme Court. Of course. My understanding was, and I could be wrong, my understanding was that there had to be express consent in order to waive that. But be that as it may, I do want to focus on a couple of points made by counsel. First, the claim that was made, this proof of claim, rested on two theories. The first was a breach of contract, the operating agreement, and the second was contribution. The bankruptcy court did not find in favor of Mr. Sergioson either. There was no evidence, apparently, and I agree with that, to support either of those two claims, even though those are the claims that were asserted in the state court action as well. After, after, his counsel wrote a letter not mentioning anything about an oral agreement or advancing monies, et cetera. Instead, the bankruptcy court literally made a contract out of whole cloth with this implied in fact agreement, never before argued or asserted by Mr. Sergiotis. And she did this in part because, I believe, of the bias created by the introduction of lots of extraneous information to which Mr. Ademus did not have the opportunity to respond. This subsequently was a 727 action that he was not prepared to defend against when he showed up for an evidentiary hearing. Thank you, Mr. Cook. Thank you, Your Honor. The case is taken under advisement and the court will be in recess.